CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 1 8 2009
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KENNETH BROWN, | ) |
| Plaintiff, | ) Civil Action No. 7:07CV00282 |
| v. | ) **MEMORANDUM OPINION** |
| VIRGINIA DEPARTMENT OF TRANSPORTATION, | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

The plaintiff, Kenneth R. Brown, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-5 ("Title VII"), asserting that the defendant wrongfully discharged him based upon his race. The matter is now before the court on the defendant's motion for summary judgment. For the reasons set forth below, the motion will be granted.

### FACTUAL BACKGROUND

In his form complaint, the plaintiff, Kenneth R. Brown ("Brown"), proceeding pro se, alleges that he was wrongfully discharged from his position as an Engineering Technician III on February 28, 2006. Although he was told that he was terminated based upon his failure to follow a supervisor's instructions, Brown, who is African-American, contends that he was discharged based upon his race and in retaliation for making an internal complaint of discrimination in June of 2005. In an opinion entered on May 22, 2008, however, the court granted the defendant's motion to dismiss with regard to the plaintiff's retaliation claim. Therefore, the discriminatory discharge claim alone is the subject of the instant motion for summary judgment.

Brown's termination followed the issuance of a Group II Written Notice for the failure to

follow an agreed upon written policy with regard to Brown's attendance and approval of leave. Brown had previously received written notices and other forms of disciplinary action related to time and attendance issues. Brown began working for the Virginia Department of Transportation ("VDOT") on November 3, 1986 as an Engineering Technician B. In 1996, Brown was reallocated to the position of Engineering Technician III, a move that resulted in an increase in pay. Brown remained in this position until the date of his termination, which took effect March 1, 2006. At that time, his immediate supervisor was Brian Becker.

While employed by VDOT, Brown was subject to the Department of Human Resource Management's Standards of Conduct. See Brown Deposition, Exhibit 14. Those standards provide that employees are expected to report to work as scheduled, to arrange planned absences from work in advance with their supervisors, and to report unexpected absences to their supervisors as quickly as possible. Id. at III.A. Unsatisfactory performance is to be addressed either through referral to the employee assistance program, counseling, and/or disciplinary action. Id. at VI.B. Unacceptable standards of conduct are grouped according to their level of severity with Group I being the least severe and Group III being the most severe. Id. at V.B. The accumulation of four written notices for Group I offenses should result in discharge, as should a second active Group II written notice or a Group II written notice following three active Group I written notices. Id. at VII.D.

In his performance evaluation which was effective December 1, 1997, but dated October 8, 1998, Brown was advised to "show more dedication to work and improve his attendance." See Brown Deposition, Exhibit 1. Later, Brown's October 5, 2001 performance evaluation indicated that Brown was rated "Below Contributor" in the category of Task/Time Management.

2

See Brown Deposition, Exhibit 2. Brown also received this rating in his performance evaluations dated October 17, 2002, October 23, 2003, and October 14, 2004, with his supervisors noting that Brown needed to pay attention to finishing his tasks on a timely basis and actively seeking out his next task. See Brown Deposition, Exhibits 3-4, 6.

In March 2003, Brown's supervisor at that time, Patrick Wood, noted that Brown had missed work on 8.75 days in February of 2003, and that in each case, the absence was without advance notice. See Brown Deposition, Exhibit 8. Wood then stated, in an email dated March 3, 2003, that Brown would not be permitted to take vacation or personal leave days without 48 hours notice and that any sick leave in excess of one day would require a doctor's note. Id. Brian Becker, Brown's supervisor at the time of his discharge, sent the plaintiff an email on May 31, 2005 in which he again noted excessive use of unscheduled personal, sick and vacation leave. Id. Becker also stated that the plaintiff would henceforth be required to provide at least 48 hours advance notice to his supervisor for personal and vacation leave, that sick absences should be reported within the first 30 minutes of the workday, and that any sick leave of more than one day or occurring the day before or after a weekend or holiday would require a doctor's note. Id. Nevertheless, on June 6, 2005, Brown received a Group I written notice for unsatisfactory attendance and/or excessive tardiness. Id. In the written notice, Becker noted that Brown had called in on that date to state that he was coming in late as he had overslept. Id. Brown reported unscheduled vacation time of 1.5 hours. Id.

Brown again failed to report to work on time on June 20, 2005. See Brown Deposition, Exhibit 9. Brown finally contacted Becker at 10:45 a.m. on that date to report that his car had been stolen, and promised to call Becker back after he had spoken to the police so that Becker

3

could give him a ride to work. Id. Brown did not call back until late in the afternoon, however. Id. As a result, Brown received a Group II written notice on June 21, 2005 for violating the attendance guidelines that had been set forth in Becker's previous email. Id. Brown was also suspended for a period of five days. Id.

After this incident, Brown appeared to show some improvement with regard to his attendance at work as evidenced by the "Contributor" rating he received in his October 2005 performance evaluation. See Brown Deposition, Exhibit 5. On February 2, 2006, however, Brown received a Group I written notice for failing to enter his timesheets at the end of the workday and failing to enter his daily tasks in his daily diary. See Brown Deposition, Exhibit 11. Becker had set forth the requirement that Brown keep a daily diary in an email dated November 30, 2005. Id. On February 13, 2006, Brown was issued his third active Group I written notice for inadequate and unsatisfactory work performance and failure to follow instructions. See Brown Deposition, Exhibit 12.

Finally, Brown received his second Group II written notice on February 23, 2006 for failure to follow the written attendance and leave policy. See Brown Deposition, Exhibit 13. In that notice, Becker stated that Brown had arrived twenty minutes late for work on February 13, 2006 without an excuse. Id. Later that morning, Brown asked to leave work early because he was feeling sick. Id. Becker told Brown he could do so, but that he would have to submit a doctor's note as February 13th was a Monday. Id. Brown never provided this verification. Id. In the written notice, Becker also stated that Brown had left a message for Becker on February 6, 2006, approximately one week earlier, asking to take an unscheduled personal leave day to have work done on his car, again in violation of the agreed leave policy. Id. On February 10, 2006,

4

Brown had apparently responded to Becker's concerns with regard to the violation on February 6th and indicated that he would follow the policy. Id.

Based upon Brown's accumulation of three Group I and two Group II written notices, Becker recommended that Brown's employment be terminated. See Declaration of Brian H. Becker. At a meeting on February 23, 2006, Brown was given a termination letter as well as the opportunity to present evidence in mitigation on February 28, 2006. Id. Brown provided evidence that he had problems with his heart, however he did not present a doctor's note to that effect. Id. Brown's termination then took effect on March 1, 2006. Id.

The plaintiff proceeded to file a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 22, 2006. On March 5, 2007, the EEOC issued Brown a dismissal and notice of right to sue. The plaintiff then filed this action on June 1, 2007, claiming that he was terminated because of his race, in violation of Title VII. The defendant has now filed this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, stating that Brown cannot demonstrate that he was performing to VDOT's expectations at the time of his discharge or that similarly situated employees were treated differently. The Clerk sent the plaintiff a notice directing him to respond to the defendant's motion for summary judgment, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), however the plaintiff filed no response. After the time for such a response had passed, the parties appeared before the court to present their arguments on the motion. As a result, the motion is now ripe for review.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to

5

judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985). When a motion for summary judgment is supported by affidavits or other evidence as provided for in Rule 56, the opposing party may not rest upon the allegations in the pleadings and must, instead, present evidence showing that there is a genuine issue for trial. If the adverse party fails to present such evidence, summary judgment, if appropriate, should be entered. Fed. R. Civ. P. 56(e); Atkinson v. Bass, 579 F.2d 865, 866 (4th Cir.), cert. denied, 439 U.S. 1003 (1978).

## DISCUSSION

In order to make out a prima facie case of discriminatory discharge under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004). Once a plaintiff makes a showing sufficient to support this prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for his discharge. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer is able to articulate such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is actually merely a pretext for discrimination. Id. at 804.

6

In this case, the defendant contends that Brown has not made out his prima facie case in the first instance because he has failed to demonstrate that his job performance was satisfactory or that other employees who were not African-American were retained under apparently similar circumstances. The defendant also argues that, even if the court were to hold that Brown did make out a prima facie case under Title VII, its decision to terminate Brown was based upon a legitimate, nondiscriminatory reason, i.e., his poor attendance record and history of failing to follow the agreed upon attendance policies.

### I. Brown's Prima Facie Case Under Title VII

VDOT first contends that Brown's job performance was unsatisfactory at the time of his termination based upon his long-standing history of attendance issues. Brown's attendance problems go back to at least 1997 when his performance evaluation indicated that he needed to improve his attendance. In his deposition, Brown admitted that he was sometimes late during this time period. See Brown Deposition at 30. In performance evaluations completed in 2002, 2003, and 2004, Brown was cited as "Below Contributor" in the category of Task/Time Management. In the October 17, 2002 evaluation, for example, Brown's supervisor noted that he should "inform his supervisor as far in advance as possible of any planned absences." See Brown Deposition, Exhibit 3. In his deposition, Brown stated that he disagreed with his supervisors' comments with regard to his attendance problems, but that he did not question the ratings in his performance evaluations because he was afraid he would be terminated. See Brown Deposition at 33, 39.

As a result of Brown's long-standing history of absences from work, Brown's supervisor put a policy in place in March of 2003 which required Brown to provide forty-eight hours notice

7

prior to taking vacation or personal leave days and to provide a doctor's note for any sick leave taken in excess of one day. This policy was restated and expanded upon by Becker in 2005 when Becker set a guideline that required Brown to provide at least 48 hours advance notice to his supervisor for personal and vacation leave, report sick absences within the first 30 minutes of the workday, and provide a doctor's note for any sick leave of more than one day or occurring the day before or after a weekend or holiday.

Within just a week of Brown's receipt of this guideline, however, he violated the policy by taking unscheduled vacation time due to oversleeping. As a result, Becker issued Brown a Group I written notice. A short time later, in June 2005, Brown received a Group II written notice and was suspended for a period of five days for failing to call in on time and taking an unscheduled personal leave day. As the defendant admits, Brown's attendance issues did show improvement for a period of time after the issuance of this notice. Nevertheless, Brown again started violating the written guidelines in 2006.

In February 2006, Brown received one Group I written notice for failing to enter his timesheets at the end of the workday and failing to enter his daily tasks in his daily diary and a second Group I notice for inadequate and unsatisfactory work performance and failure to follow instructions. Brown also took an unscheduled personal leave day on February 6, 2006, which was followed by a written warning from Becker. Nevertheless, on February 13, 2006, Brown arrived late for work without an excuse and left early claiming he was sick. Brown never provided a doctor's note for this absence, however, even though the written guideline required such a note because this absence was on a day following a weekend.

This final infraction resulted in a second and final Group II written notice which was

8

issued on February 23, 2006 and which ultimately led to Brown's termination. The defendant contends that this pattern of behavior demonstrates that Brown had a long-standing problem with adhering to its attendance policies and that, despite VDOT's efforts to counsel Brown, including referring Brown to an Employee Assistance Program, and providing formal disciplinary measures, his performance failed to consistently improve.

Although unplanned absences on the part of an employee do not necessarily lead to a conclusion that the employee's job performance is unsatisfactory, the court agrees that the pattern of unexcused absences demonstrated in this case, combined with Brown's consistent failure to follow established guidelines with regard to those absences, mandates such a finding here. Brown's attendance problems were first documented almost a decade prior to his discharge and worsened over the three to four years immediately preceding his termination. VDOT worked with Brown throughout this period, referring him to the Employee Assistance Program, providing informal warnings, setting guidelines to reduce unexcused absences, and providing written warnings when such absences did occur. In his declaration, Randall Phillips, the Assistant District Location & Design Engineer at the VDOT office in Salem, states that Brown's frequent attendance issues had a direct negative impact upon the department in that other employees would be required to cover Brown's projects when he was not at work, a situation made more difficult by Brown's failure to properly maintain his daily diary and timesheets. See Phillips Declaration at 3.

The court notes that the evidence provided by the defendant in support of its contention that Brown's work was unsatisfactory is undisputed in this case because the plaintiff has failed to file any response to the defendant's motion for summary judgment or to present any evidence to

9

demonstrate that there remains a genuine dispute of material fact with regard to this issue. At the hearing, Brown simply stated that he had always performed his job and completed his assigned tasks. These statements alone, however, do not refute VDOT's evidence regarding the disciplinary actions taken with regard to Brown or the impact of Brown's absences upon the workplace.[1] Ultimately, the court concludes that Brown has not been able to establish a prima facie case of discriminatory discharge under Title VII because he has not been able to show that his job performance was satisfactory at the time of his termination.

In order to make out a prima facie case under Title VII, the plaintiff must also show that other employees who are not members of the protected class were retained under apparently similar circumstances. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004). In this case, Brown does assert that he was treated differently than other VDOT employees. Specifically, Brown alleges in his deposition that Jess Weitzenfeld and Timothy Dowdy also came in late "consistently every day," however they were not disciplined by their supervisor. See Brown Deposition at 179. Weitzenfeld and Dowdy are white, whereas Brown is African-American. The defendant contends, however, that Brown has not been able to demonstrate that Weitzenfeld or Dowdy were similarly situated to him, and that, as a result, he is again unable to

---

[1] The plaintiff did submit what he styled an "Application for Writ of Attachment" to the defendant which appears to be a series of interrogatories as well as several requests for production of documents. In response to the court's query as to why Brown had not submitted any evidence to the court in response to the defendant's motion for summary judgment, the plaintiff referred to the "Writ of Attachment" as intended to elicit responses from the defendant which might provide such evidence. As the defendant notes, however, the court's scheduling order entered in this case set January 6, 2009 as the deadline to complete discovery. The plaintiff's "Writ of Attachment" was not filed until that date, which would not have provided sufficient time for the defendant to respond to his requests on a timely basis. The plaintiff submitted his Rule 26 disclosures on October 3, 2008 and was deposed on November 8, 2008, approximately two months prior to the discovery deadline. This should have provided Brown with ample time to generate his discovery requests for the defendant. Nor did the plaintiff file a motion to extend the discovery deadlines in this case. Therefore, the court finds that Brown's "Application for Writ of Attachment" was not timely. Nevertheless, the court stated at the hearing that it might grant a continuance in this matter if an attorney appeared on Brown's behalf; however, there has been no notice of appearance filed as of the date of this opinion.

successfully make out a prima facie case of discrimination under Title VII against VDOT.

When comparing different employees and their discipline, this court has stated that "[a] plaintiff] must establish that these other employees are similarly situated in all material respects." Monk v. Stuart M. Perry, Inc., 2008 WL 4450220, at * 4 (W.D. Va. 2008) (quoting Cobb v. Potter, 2006 U.S. Dist. LEXIS 63118, at * 28 (W.D.N.C. Aug. 22, 2006)). Specifically, "[t]he employees 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

In this case, neither Weitzenfeld nor Dowdy were supervised by Becker, Brown's supervisor. In fact, Brown himself admitted that they were supervised by Peter Hammack, although all of these employees, including himself, worked in the same office. See Brown Deposition at 178. In his declaration, Randall Phillips states that both Brown and Weitzenfeld worked as Roadway Designers at the time of Brown's termination. See Phillips Declaration at 3. Dowdy, on the other hand, worked as a Project Engineer, reporting to Peter Hammack, and actually supervised Weitzenfeld from August 23, 2005 to June 9, 2006. Id. at 2. Phillips also states that any instances of tardiness on the part of Dowdy or Weitzenfeld were infrequent or sporadic and involved only a few minutes. Id. at 3. Furthermore, their behavior improved after counseling and did not require the use of formal disciplinary action, unlike Brown. Id. at 4. With regard to Brown, Phillips states

> Further, while these individuals occasionally would be late by no more than
> several minutes, Mr. Brown's attendance problems were far more long-standing
> and/or severe - as he often would be late to work by an hour or more or simply not

11

> show up (which would have a far more negative impact on the workplace, as someone often would have to cover the project Mr. Brown was working on when he showed up to work hours late or failed to come in at all). The problem of providing adequate coverage was further compounded by the fact that Mr. Brown often failed to enter his timesheet at the end of each day and/or enter his daily tasks in his daily diary.

Id. at 3-4.

In his deposition, Brown testified that Dowdy and Weitzenfeld came in late consistently every day, but that no disciplinary actions were taken against them. See Brown Deposition at 179. Brown admitted, however, that he did not know if they received any indication in their performance evaluations regarding attendance issues or whether they received any written notices. Id. at 180-81. Brown also stated that he did not know for sure whether they had called in to their supervisor if they were going to be late. Id. at 182-84. Brown did testify that Becker informed his supervisor at an informal meeting that if Becker had to write Brown up for attendance issues, he would also have to write Dowdy and Weitzenfeld up for coming in late as well. Id. at 185-86. However, Brown acknowledged that Becker was not their supervisor. Id. at 188. At the hearing on this matter, Brown also admitted to the court that he was not aware of whether Dowdy and Weitzenfeld had received the benefit of counseling for any lateness issues.

Ultimately, the court concludes that neither Dowdy nor Weitzenfeld were similarly situated to Brown and are not proper comparators because they were supervised by different individuals and had different disciplinary histories than Brown. As previously set forth, Brown had a long-standing history of attendance issues and had not shown long-term improvement even after receiving counseling and formal discipline from his employer. On the other hand, Dowdy and Weitzenfeld may have been late to work on occasion, however the uncontradicted evidence

12

submitted by VDOT indicates that their attendance improved after receiving counseling or discipline from their supervisors. Furthermore, there is no indication that any attendance problems they did have were as significant or long-standing as those of the plaintiff. As a result, the court finds that Brown is unable to demonstrate that other employees who were not African-American were retained under apparently similar circumstances. Therefore, the court concludes that the defendant's motion for summary judgment must be granted due to Brown's failure to properly set forth his prima facie case of discriminatory discharge under Title VII.

**II.     Brown Was Terminated for Legitimate, Nondiscriminatory Reasons**

Even if the court were to hold that the plaintiff has made out a prima facie case of discrimination, the court nevertheless finds that the defendant has set forth a legitimate, nondiscriminatory reason for Brown's termination. Essentially, as previously set forth, VDOT contends that Brown's long-standing, recurring pattern of attendance problems, combined with the impact his absences had on the workplace and other employees, justified Brown's discharge. The court is constrained to agree, as it has previously stated, that Brown's attendance problems, coupled with his failure to improve his behavior on a permanent basis following counseling or formal discipline, had a direct, negative impact on the workplace. The final straw in VDOT's decision to terminate Brown, after several years of working with him to improve his time and attendance, seems to have been his failure to call in to his supervisor when he was going to be late in February of 2006 and to provide a doctor's note as required. This occurred only one week after Brown had received an informal warning from Becker for taking an unscheduled personal leave day without obtaining advance approval as required by the guidelines. The court finds that the defendant's justification for Brown's discharge is both legitimate and based upon a factor

13

other than race. Furthermore, the plaintiff has made no attempt and offered no evidence to demonstrate that the reason given by VDOT for his discharge is merely pretext for impermissible racial discrimination. Therefore, the court concludes that the plaintiff's claim is without merit, based upon the evidence before the court, and the defendant's motion for summary judgment will be granted.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to the plaintiff and all counsel of record.

ENTER: This 18th day of February, 2009.

*United States District Judge*